## ST. LOUIS & S. F. R. CO. v. KERNS.

No. 2693.    Opinion Filed June 11, 1913.

Rehearing Denied December 23, 1913.

(136 Pac. 169.)

1.    **PLEADING—Motions—Judgment on Pleadings.**    A motion for judgment on the pleadings should be denied where the pleadings raise a question of fact to be tried.

2.    **CARRIERS — "Passenger" — Rights — Contributory Negligence.** Kerns made and entered into a special shipment contract with the railroad company covering transportation of a car of household goods and live stock.    As consideration for the feeding, watering, and caring for the live stock, Kerns was given free transportation.    The special contract provided, among other things, that Kerns should have the sole care of said live stock and should feed, water and otherwise care for them; that he would remain in the caboose attached to said train, while the train was in motion and would not get on or off any freight car while switching was being done at stations.    **Held:**
      (a)    That Kerns was a passenger, the consideration for his passage being the care given the stock.
      (b)    That as such he was entitled to the highest reasonable and practicable skill, care, and diligence from the railroad company.
      (c)    That in the discharge of his imposed duty under the contract he had a right to enter the car at a station, at noon, for the purpose of feeding and caring for the stock.
      (d)    That he, having no control of the movement of the cars, or the train, violated no valid term of said contract by being in said car as aforesaid while the same was being switched.

3.    **TRIAL — Instructions — Assuming Facts.**    Instruction examined and held to be a correct statement of the law under the facts of the case.

4.    **APPEAL AND EROR—Verdict—Evidence.**    Evidence examined, and held sufficient to sustain the verdict.

(Syllabus by Robertson, C.)

*Error from District Court, Tillman County;*
*J. T. Johnson, Judge.*

Action by J. K. Kerns against the St. Louis & San Francisco Railroad Company, a corporation.    Judgment for plaintiff, and defendant brings error.    Affirmed.

*W. F. Evans, R. A. Kleinschmidt,* and *E. H. Foster,* for plaintiff in error.

*Gray & McVay* and *Hudson & Mounts,* for defendant in error.

Opinion by ROBERTSON, C. The plaintiff in his petition charges:

"That on the 27th day of October, 1908, the plaintiff was by the permission, knowledge, and the consent of the defendant, its agents, servants, and employees, in a certain freight car looking after his live stock being shipped by the defendant, said car being upon the track of the defendant at and near the oil mill in the city of Frederick, state of Oklahoma, and while in said freight car at the place aforesaid, and while engaged as aforesaid in taking care of his live stock as aforesaid and without fault and negligence on his part, the defendant, its agents and employees, carelessly and negligently ran an engine into and against said car, knocking plaintiff down upon the floor of said car by said collision and grievously bruising, mangling, and wounding him and which made him sick and sore, injuring him in the following particulars, to wit: Greatly bruising his left side, severely injuring or breaking one rib, greatly injuring the muscles and tendons of his left side, and causing an enlargement of the spleen, thereby permanently injuring the plaintiff, rendering him unable to perform physical labor, and disfiguring him for life. * * * That said collision and the injury thereby inflicted on the plaintiff were caused by the negligence, mismanagement, and want of care of the servants, agents, and employees of said defendant in the negligent management and control of the said engine and said freight car which was being managed and controlled by the defendant, its agents, servants, and employees."

The defendant, on the 11th day of November, 1909, filed its answer to said petition, which sets up, in substance, the following defenses:

"(1) A general denial. (2) That when said shipment of live stock mentioned in plaintiff's petition was received, a contract was entered into by the defendant and one J. A. Davis, the owner of said live stock, which said live-stock contract is marked 'Exhibit A' and made a part of said answer (12). And that in consideration of same, and of the transportation, furnished to plaintiff, plaintiff and defendant entered into a special written

agreement which was signed by plaintiff, and the duly authorized agent of the defendant, wherein it was provided as follows: 'The undersigned, owners in charge of the live stock mentioned in the within contract, in consideration of the free pass granted us by the St. Louis & San Francisco Railroad Company, hereby agree that the St. Louis and San Francisco Railroad Company shall not be liable for any injury or damage of any kind suffered by us while in charge of said stock or on our return passage, and we hereby further agree to observe the following regulations, and do hereby release said railroad company, or those operating the same, from all liability for any injury or damage suffered by us, if injured while violating said regulations: Will remain in the caboose car attached to the train drawing said car while the train is in motion. Will get on and off said caboose car only while same is still. Will not get on, or be on, any freight car while switching is being done at station. Will not walk or stand on any track or station or other place at night without lantern. J. K. Kerns. J. W. Hall, Agent.' And defendant alleges that, if plaintiff received the injuries alleged to have been received by him, they were received while said car was being switched in the yards of defendant and in violation of the terms of said contract without any fault on the part of defendant, its agents, servants, or employees. That it was further provided by said contract that no agent of said company has any authority to waive or modify the terms of said agreement."

The plaintiff on March 24, 1910, filed his reply to said answer. The allegations of said reply are substantially as follows:

"(1) A general denial of each and every allegation contained in the answer except such as are specifically admitted. (2) That plaintiff was in said freight car while the same was on the track of the defendant at or near the oil mill near the city of Frederick, and while in said car he was discovered by the defendant, its agents or employees, in time to escape from and avoid the danger of injury had he been notified by them, and that said agents and employees carelessly and negligently, knowing plaintiff to be in said freight car, ran said engine into same, inflicting the injuries set forth in plaintiff's petition, and that said agents and employees of defendant, after discovering plaintiff in said car, failed to give him notice that the engine was to be run against the same."

The cause was tried on March 25, 1910, resulting in a verdict for plaintiff for $300, and thereafter, on motion of defendant for new trial, said verdict was set aside and a new trial

granted, and said cause reassigned for trial. And thereafter, on October 11, 1910, said cause again came on for trial, and, before entering upon the same, the defendant moved for judgment on the pleadings, which said motion was overruled and the defendant excepted. The trial resulted in a verdict for the plaintiff in the sum of $1,500, and the railroad company brings error and assigns, as grounds for reversal: (1) The court erred in overruling defendant's motion for judgment on the pleadings. (2) The court erred in overruling defendant's demurrer to the evidence. (3) The court erred in giving instruction No. 3. (4) The court erred in overruling defendant's motion for a new trial.

In support of the first assignment of error, the railroad company insists that when affirmative matter of defense is set up in the answer, and plaintiff seeks by reply to meet such defense by way of confession and avoidance, the matter alleged in avoidance must be sufficient to overcome the defense set up in the answer. It is urged that by the allegations of plaintiff's reply it is admitted that the injury complained of was occasioned by the violation of the terms of the contract pleaded in defendant's answer, but that a waiver of the conditions of said contract is attempted by the reply of plaintiff; but the company insists that even though the allegations of the reply were true they would not constitute a waiver. The company also insists that by virtue of the terms of the contract it was not its duty, nor the duty of its agents, to inform plaintiff that his presence in the car, while the same was being switched, was attended by danger, for the reason that his signature to the contract was a sufficient warning that such conduct was dangerous. In support of these contentions the railroad company relies upon the doctrine announced in *St. L. & S. F. R. Co. v. Phillips,* 17 Okla. 264, 87 Pac. 470, and *St. L. & S. F. R. Co. v. Cake,* 25 Okla. 227, 105 Pac. 322, where it is said:

"It would certainly seem to be the duty of the defendant in error (plaintiff), upon admitting the execution of the contract, to either especially allege compliance with the terms thereof, or to especially plead some of the facts, if any such there were, which might tend to show a substantial compliance with the terms

of said contract, and which might tend to relieve him from compliance therewith, or he should in some form have alleged a waiver of the terms of said contract on the part of the defendant."

The plaintiff insists that the foregoing reasons and authorities do not apply in this case for that, while it is true that the reply is unverified and the execution of the contract set up in defendant's answer thereby admitted, yet that part only excused defendant from proving the contract, but did not in any wise take away the right of plaintiff to establish the truthfulness of the allegations of his reply. The execution of the contract is admitted by the plaintiff, but by such admission plaintiff does not admit the truthfulness of the allegations of the answer, or that the mere execution of the contract, with its stipulations and conditions, precludes him from showing that the said conditions had been waived, or were otherwise inoperative on him; on the contrary, plaintiff by his reply set up a state of facts which, if found to be true by the jury, according to his theory, will entitle him to recover notwithstanding the terms and conditions of the contract. We are inclined to disagree with counsel for the railroad company in their position on this question. We do not think the cases cited, *supra,* are at all applicable. In both of those cases the reply of the plaintiff was an unverified general denial; no facts were pleaded in addition to the general denial that could in any manner be construed as constituting a defense to the new matter set up in defendant's answer, and, inasmuch as the general denial amounted only to a legal conclusion, it follows, of course, that it was insufficient in law to entitle the plaintiff to recover. But in the case at bar we have a wholly different condition confronting us. The reply, in addition to the general denial, charges the existence of certain facts, which, if true, would relieve plaintiff from the effects of the literal terms and conditions of said contract, in so far as said contract is relied upon to relieve the company from the results of its negligence in connection with the accident complained of. Thus, in said reply, it is alleged:

"That plaintiff was in said freight car while the same was on the track of the defendant at or near the oil mill near the

city of Frederick, and while in said car *he was discovered by the defendant,* its agents or employees, in time to escape from and avoid the danger of injury had he been notified by them, and that said agents and employees carelessly and negligently, knowing plaintiff to be in said freight car, ran said engine into same, inflicting the injuries set forth in plaintiff's petition, and that said agents and employees of defendant, after discovering plaintiff in said car, failed to give him notice that the engine was to be run against the same."

Section 1 of the special contract pleaded by defendant contains the following provision:

"That he will load, unload, and when necessary reload said stock *and feed, water and attend to the same* at his own risk and expense, while the same are in the cars of the company or any connecting line or lines, or while in any stockyards of the company or any connecting line," etc.

While section 12 thereof provides that, "in consideration of free transportation for person or persons to accompany the live stock, * * * it is agreed that the said car and said live stock contained therein, are, and shall be in the sole charge of such person or persons for the purpose of attention to and care of said live stock," etc.

The evidence shows that there were four head of horses in the car; that Mr. Kerns, when the train stopped at Frederick, at noon, left the caboose and went to and entered the car for the purpose of feeding the horses; that such trip was necessary and that it was his specific duty to care for the stock; that while thus engaged one of the brakemen came along and told him to look out as the engine was coming; that thereupon he took hold of the door of the car to brace or support himself when the engine struck the car with such force as to throw not only himself, but the horses, to the floor, knocking them down, and breaking the partitions down, and shaking things up generally and giving to plaintiff the injuries complained of.

From a consideration of the foregoing it is clearly apparent that the court did not commit error in denying the company's motion for judgment on the pleadings. A motion for judgment on the pleadings should be denied where the pleadings raise a question of fact to be tried. *Noland v. Owens,* 13 Okla. 408,

74 Pac. 954. That there were issues of fact raised by the reply none will deny, and that these facts, if true, would entitle plaintiff to prevail, is likewise true. To be sure, the special contract provides that plaintiff "will not get on or be on any freight car while switching is being done at station"; but this contract, like all others, must be construed as a whole, and the same must be so construed as to render the same consistent and reasonable, in order to carry out the intention of the parties.

If the contract required plaintiff to feed and care for the live stock and imposed on him the *sole* care, which it does, then it was certainly in contemplation of the parties that he should enter the car, and it is a matter of common knowledge that he could enter the car for this purpose only when the train made stops at stations. Plaintiff did not have charge of the movement of the train at any place, and if, in the discharge of an imposed duty, he was in the car caring for the horses and the train crew, in the discharge of their duties, found it necessary to move this particular car in switching, it certainly cannot be said that plaintiff violated any of the provisions of his contract. It is quite clear that the horses had to be fed and cared for, and it is equally clear that the train would not be held at any place for this particular purpose; hence it follows that in order to perform a rightful duty the plaintiff had a right to be in the car at the time and place of the accident complained of. The special contract provided that he should ride in the caboose while the train was in motion, and that he should get off and on said caboose only while the same was standing still. These provisions emphasized the foregoing contention that from the very nature of the duty imposed by the contract the plaintiff was compelled to enter the car, if at all, when the train was standing still at the station, and, he having no control of the car, ought not to be held culpable if the train crew, without his knowledge or consent, took the car and placed it on the switching track where the accident occurred.

It is hinted, also, that plaintiff assumed all the risk of injury on account of the free transportation guaranteed him by this special contract. This is not true. He did, perhaps, assume cer-

tain risks, but he did not assume the risks consequent on the gross negligence of the company. If that be the contention of the defendant, it is only necessary to say that such a contract would be void and unenforceable. The company furnished plaintiff free transportation for a consideration. This consideration was that he should feed, water, and care for the live stock. Had plaintiff not done this, the duty would have been imposed by law upon the carrier, and this service, on the part of the plaintiff, was the consideration for the free transportation and was as good and sufficient as though he had paid the regular passenger fare.

And it is also contended that plaintiff did not occupy the relation of passenger to the defendant company. This contention is also erroneous. In *Railroad Co. v. Beaver,* 41 Ind. 493, it was held that a person who is traveling with the consent of the railroad company on a freight train in charge of stock, or goods carried by the company for him, is a passenger. In *Railroad Co. v. Lockwood,* 17 Wall. 357, 21 L. Ed. 627, it is held that, when such a person is traveling in charge of cattle on a drover's pass, he is a passenger for hire. The consideration for his passage is the service he renders in taking care of the cattle, or the charge made against him or his employer for shipping cattle. See, also, *Railroad Co. v. Horst,* 93 U. S. 291, 23 L. Ed. 898; *Railway v. Curran,* 19 Ohio St. 1, 2 Am. Rep. 362; *Railway Co. v. Brown,* 123 Ill. 162, 14 N. E. 197, 5 Am. St. Rep. 510; *Railroad Co. v. Blumenthal,* 160 Ill. 40, 43 N. E. 809. Therefore, if the plaintiff was a passenger, which, under the foregoing authorities he certainly was, it was incumbent upon the defendant company to exercise toward him the highest reasonable and practicable skill, care, and diligence. Under the facts of this case, it was apparent that no such care and diligence was used.

Counsel for the railroad company contend in their brief that nowhere in the record is it stated, or shown, that the engine struck the car with any *unusual* violence, and pretends to say that the plaintiff does not charge or say that the violence was out of the ordinary, and cite as supporting their contention the case of *St. Louis & S. F. R. Co. v. Gosnell,* 23 Okla. 588, 101 Pac. 1126, 22 L. R. A. (N. S.) 892; but a reading of that case shows the

facts to be so different as to render it worthless as an authority herein. In the Gosnell case, the plaintiff was a passenger for hire on a freight train and took a seat in the caboose; just before reaching a station the engine stopped at a water tank about 150 yards from the depot when plaintiff, thinking it had reached the station, stepped out on the rear platform to talk to a friend seated on the car steps; learning that the train had not reached the station, the plaintiff, when the train started again, stepped back into the caboose on the way to his seat, and was standing with his hands against the casings of the rear door, when the train suddenly stopped at the depot with such a jar that he was knocked off his feet and injured. It was held in that case that from these facts no inference of negligence on the part of the company could be legitimately drawn, that a motion to direct a verdict for defendant should have been sustained. This undoubtedly states a correct rule of law; but we submit that, under the facts of this case, it is wholly inapplicable, and therefore not controlling as an authority. In this case the plaintiff was not injured by a mere jerk while in a place where he ought not to have been, but the evidence shows that the accident was occasioned by the gross negligence of the defendant in the operation of its engine.

Counsel for the railroad company in their brief insist that "nowhere in the record is it stated that the engine struck the car with any *unusual* violence" (page 21). We do not know whether the force used in this particular instance is or is not unusual with the Frisco. The undisputed evidence shows that a brakeman passing by the car immediately prior to the accident called to plaintiff to "be careful, the engine is coming," whereupon plaintiff took hold of the door to protect himself; that just after the warning the engine struck the car with sufficient violence to not only knock plaintiff down, but also all four horses, besides breaking down the partitions that were nailed to the sides and bottom of the car to keep the horses in one end and away from the household goods. This may be the usual and ordinary method of handling cars on defendant's lines, but the jury evidently did not believe it to be the reasonable way, nor are we very

much impressed with counsel's contention in this respect. The evidence above referred to is nowhere in the record denied, and it occurs to us that such statements in the brief as the one above alluded to are not supposed to be seriously considered.

It is next contended that the allegations of plaintiff's reply are not sustained by the evidence. It is unnecessary to enter into a detailed discussion of this alleged error. The evidence shows that the train crew knew about the horses in the car, and knew that plaintiff was in charge of the car, and knew that he had been in the car prior to the time of the accident, and the undisputed evidence shows that plaintiff, shortly prior to the time the engine struck the car, was warned by the brakeman to "be careful, the engine is coming." Saying nothing about the duty of the defendant concerning the manner of handling the car under the contract, it is apparent that there was some evidence in the record reasonably tending to support the verdict on this particular point. So, too, as to the other allegations of plaintiff's reply. Such being the case, it is unnecessary to give further consideration to this alleged error. *City of Wynnewood v. Cox,* 31 Okla. 563, 122 Pac. 528.

Complaint is also made on account of giving instruction No. 3, which reads as follows:

"You are instructed that it is the duty of the defendant to operate its trains in such manner as to avoid injury to persons rightfully using the same, and if you find from the evidence that defendant, in making the coupling between its engine and the car in which this plaintiff was caring for his stock on the occasion in question did so in a needlessly violent and careless manner, and this plaintiff was injured thereby, then you will find for plaintiff and assess his damages at such sum as you may think him entitled, not to exceed $1,950."

It is urged that this instruction does not correctly state the law applicable to the facts in this case, inasmuch as it assumes that plaintiff was "rightfully using" the car at the time of the injury, when as a matter of fact he was using it in open violation of the terms of his contract, and for the further reason that it permits the jury to find that the coupling was made in a needlessly violent and careless manner, when as a matter of fact

there is no evidence to support such finding. Neither contention is sound. As has been seen heretofore, plaintiff was rightfully in the car at the time of the accident, and the jury properly found that the accident was occasioned by the needlessly violent and careless manner in which the engine struck the car. There was no error in the giving of this instruction.

For the reasons hereinabove given it also necessarily follows that defendant's demurrer to the evidence and its motion for a new trial were properly overruled.

From a careful consideration of the entire record, we fail to discover any error of sufficient magnitude to warrant an interference, and therefore the judgment of the district court of Tillman county should, in all things, be affirmed.

By the Court: It is so ordered.